# Colquitt *v.* State.

## *Indictment for Grand Larceny.*

1. *Corpus delicti; what sufficient proof of.*—Appellant was on trial for the larceny of a hog. The hog alleged to have been stolen was, with a number of others, kept in a lot, and disappeared during the absence of the owner, without breaking the enclosure. Evidence was introduced tending to show that the defendant and his wife had in their possession, about the time the hog disappeared, a large piece of meat and portions of the body of a hog which in size and color of the hair corresponded with that which might have been obtained from the hog that was gone; that this meat was, after being discovered, put away and concealed by the defendant's wife, and that there was prevarication on the part of the defendant and his wife in regard to the meat. After the defendant had examined several witnesses in his behalf, he moved the court to discharge him, on the ground that the *corpus delicti* had not been proved,—*held:* That the court rightly overruled the motion, and allowed the jury to pass on the evidence.

2. *Oath to jury; what record must show as to.*—It is sufficient if the record recite that the jury were sworn. It is not necessary that it should appear in what terms the oath was administered. It will be presumed to have been done properly when it is shown that they were sworn.

APPEAL from Circuit Court of Coffee.

Tried before Hon. HENRY D. CLAYTON.

The appellant was indicted, tried, and convicted for the larceny of a hog. On the trial, the State introduced a witness, who testified, that about the middle of November, 1877, he went with one Harper to a field in which Harper had put his hogs to fatten; that they missed from said field a small white hog; that they made diligent search for said hog, and could neither find it, or any place where it could have gotten out. They went to defendant's house, and found him absent. They stated to his wife that they had "lost something," and wished to hunt for it—not stating to

[Colquitt v. State.]

her what was lost or desired to be searched for. She said they might search her house, but should not search the smoke-house, which she then locked. They looked into the smoke-house, through cracks, and found therein a barrel in which was a piece of fresh hog's liver, and a small piece of a side of fresh pork, which piece "seemed to suit the size of the missing hog." Witness and Harper also discovered the nose of a small hog, lately killed, on the plate of the smoke-house. They carried the liver from the barrel and the nose from the plate off with them, and they found on the liver and in the barrel white hog hair. The nose which had been rudely dressed, also had white hair on it.

The witness further testified that they then procured a search-warrant and warrant of arrest and returned to the defendant's house; that when they returned, defendant had not come home; that they arrested him before his arrival at home, and after his arrest they demanded the key to the smoke-house of the defendant's wife, but she refused to give it up. They then took the key and searched the smoke-house. The barrel had been moved from where it had stood on one side to the centre of the smoke-house, and had been washed out; that a piece of bacon was in the barrel, but the first piece of pork had been removed, and could not be found.

The defendant, while under arrest, was then accused of taking the lost hog, which he denied; and when asked to account for the fresh liver and meat in his smoke-house, replied that he had several days before killed one of his own hogs which was black and white or sandy colored, and that he had killed the hog because it was "skittish or wild." This witness further testified that the defendant had hogs, some of which were about the size of the hog lost, but that all of defendant's hogs were black or black and white, and "that there were no skittish or wild hogs about them."

Harper, another witness for the State, testified to the same facts as to the missing of the hog and the search of the defendant's premises, and what was done and said, as detailed by the preceding witness. He testified further that defendant had but one white hog in his stock, and that he (witness) had killed that one on account of mischief done by it about his premises; that the defendant's hogs were black or black and white spotted; that they were all gentle, and "none wild or skittish." He further testified that there were "no skittish" hogs in the neighborhood.

The defendant then introduced a witness who testified that

he lived about a mile and a half below the defendant, on the
creek, and that four years ago he sold the defendant a sow
and six shoats, some of which were white; that defendant
owned ten or more black hogs when he sold these hogs to
him; that in the latter part of the year 1876, or early in
1877, the sow had six pigs, some of which were black and
white spotted, some black, and one white and white sandy;
that they became "wild or skittish" in the summer of 1877,
and used in the swamp near his house, and from there to de-
fendant's house; that he knew them well, having sold the
sow to the defendant, and that he often saw them about de-
fendant's house before they got skittish; that defendant got
him to look after them, after they commenced running in the
swamp near him, and he saw and fed them after that. This
witness further testified, that about this time, and the same
week that Mr. Harper missed his hog, defendant told wit-
ness he had killed the white and "white sandish" one of
that bunch, and that witness continued to look after said
hogs, and never saw that one since the defendant reported
that he had killed it, and that said hog would have weighed
about fifty or sixty pounds. The venue was also proved.
At this stage of the evidence, the defendant moved the court
to exclude, or limit in its effect as far as he was concerned,
the evidence of the State's witnesses in relation to going to
the defendant's house, what they saw there, what meat they
found, the color of the hair on the same, the conversation
they had with his wife, her conduct and declarations in his
absence. The court excluded the evidence of the conduct
and declarations of the wife during defendant's absence, but
allowed the evidence of finding the meat in the defendant's
smoke-house, the color of the hair on the meat and in the
barrel, and the size of the meat found, to go to the jury as
evidence against the defendant, and he excepted. This was
all the evidence. The defendant thereupon moved the court
to discharge him, and not put him on further defense, for the
reason that "the offense charged is a felony, and the law re-
quires in felonies that the *corpus delicti* be clearly and satis-
factorily proved, before the defendant can be required to
make defense; and from all that appeared by the evidence
given, the hog may be still alive." The court refused the
motion and the defendant excepted. The admission of the
evidence excepted to, and the refusal to grant the motion
and discharge the prisoner, are now assigned as error.

The judgment-entry after showing the arraignment and
plea, recites that "thereupon came a jury of good and lawful

[Colquitt v. State.]

men, to-wit, A. J. Wise and eleven others, who being sworn, say," &c.

J. E. P. FLOURNOY, for appellant.—The court should have discharged the appellant, there not being sufficient proof of the *corpus delicti* to put the defendant on his defense. The law requires the *corpus delicti* to be clearly shown, and from all that the evidence showed the hog may yet be living. The hog was small and might have gotten out of the field, and no reason is shown why the defendant should have stolen it. The court should have excluded from the jury, the evidence of the finding of meat in the defendant's smoke-house in his absence, and everything about the meat, as the proof was that the key to the smoke-house was not in the defendant's possession. It was not shown that he was in any way cognizant of the meat being there, or of the circumstances of its being placed there. The evidence utterly fails to connect the defendant with the alleged larceny in any way, and his motion to be discharged should have been granted.

The judgment-entry does not show that the jury were properly sworn, and is insufficient to support the sentence.

H. C. TOMPKINS, Attorney-General, *contra.*—Whether or not there was sufficient proof against defendant, was a question for the jury. There was some evidence tending to show his guilt, and the jury were the sole judges of its sufficiency. The *corpus delicti* is a fact like any other, and may be established by proof of circumstances tending to show its existence. It is no more necessary to establish that by direct or positive proof, than it is to establish any other fact.

The evidence of the color of the hair on the meat found, and its size, was admissible to prove the identity of the meat found with that lost; and evidence of its being found in the smoke-house of defendant, shortly after the hog was missing, was admissible as tending to show the commission of the offense by defendants, who were proven to be husband and wife.—Roscoe's Crim. Ev. 633.

The judgment-entry does not undertake to set out the oath administered to the jury. It recites that they were sworn; and this court will presume they were sworn according to law.

MANNING, J.—We can not say that there was any error in the refusal of the judge to discharge the prisoner, after the evidence had been all given in, on the ground that it did

[Colquitt v. State.]

not prove the *corpus delicti*, as it is called, and was not suf-
ficient to put him on his defense. Nor was the motion con-
sistent with the course pursued on defendant's behalf.
Witnesses were previously introduced by and examined for
him, of course, upon the assumption, that this was made
requisite by the testimony against him, on the part of the
State. How much credit was due to defendant's witnesses,
it was for the jury before whom they testified to decide.

As to the *corpus delicti*, it was shown that the hog alleged
to have been stolen was with a number of others kept in a
lot, in which they were put up to be fattened; that during
the absence of the owner this animal disappeared. When
he returned, it was gone,—and diligent search was made in
vain, both for the hog, and for a place in the fence, through
which it might have escaped. This was a year before the
trial. Evidence was introduced tending to show that de-
fendant and his wife had in their possession about the time
the hog disappeared, a large piece of meat and portions of
the body of a hog, which in size, and color of the hair, cor-
responded with what might have been obtained from the hog
that was gone,—that this meat was after being discovered
put away and concealed by defendant's wife, and that there
was prevarication, or what the jury might consider to be
prevarication and falsehood, on the part of defendant and
his wife in regard to that meat.

Whether the evidence was sufficient or not to convict was
a question for the determination of the jury. The judge of
the Circuit Court did not err in permitting it to go to them.

The assignment of error, that the record does not show
that the jury was sworn is founded on a mistake. It is not
necessary that it should appear in what terms the oath was
administered. It will be presumed to have been done prop-
erly when it is shown that they were sworn.

Judgment affirmed.